made on behalf of plaintiff to vacate such settlement on the ground of defendant's fraud. If it were, a different inquiry would be presented; but, as it is clearly a motion to enforce the attorneys' lien given by section 66, and nothing more, it must be controlled by the rules above stated.

The order is reversed, with $10 costs and disbursements. All concur.

---

(64 App. Div. 254.)

DICKINSON et al. v. FIRST NAT. BANK OF CHAMPLAIN et al.

(Supreme Court, Appellate Division, Third Department. September 4, 1901.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—TRUST FUNDS—INSURANCE PREMIUMS.

Where a firm of insurance agents collected premiums due the company and deposited them in a bank in the name of the firm for the purpose of remitting them to the company, and, after remitting checks against the deposit, made an assignment for the benefit of creditors before the checks could be presented to the bank for payment, the money, being held in trust and capable of identification, did not pass to the assignee.

Action by Thomas H. Dickinson and another against the First National Bank of Champlain and another. Submission of case on an agreed statement of facts. Judgment ordered for plaintiffs.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Everest & Signor, for plaintiffs.

Wilmer H. Dunn, in pro. per.

John H. Crook, for defendant First Nat. Bank of Champlain.

CHASE, J. On January 26, 1901, and for several years prior thereto, Charles Deal and Elmer H. Deal were partners doing business under the firm name of Charles Deal & Son as fire insurance agents at Champlain, N. Y. On said 26th day of January said Charles Deal and Elmer H. Deal individually and as such partners made a general assignment for the benefit of their creditors, which assignment was duly filed in the proper office on January 28, 1901, and the assignee in said assignment named duly qualified and entered upon the discharge of his duties as such assignee. It had been the practice of the said assignors to make deposit of the net insurance premiums collected by them in the First National Bank of Champlain, in the name of Charles Deal, and then remit the same by check to the companies or associations for which they were respectively collected. Within a few days prior to said assignment the assignors collected $228.39, exclusive of their commissions, from various persons for policies issued by the Westchester Fire Insurance Company, and $66.46, exclusive of their commissions, for policies issued by the Greenwich Fire Insurance Company. On said 26th day of January, but prior to the execution of said assignment, said assignors deposited said amounts in said bank in the name of Charles Deal, and issued checks for said amounts payable to said companies respectively, and duly forwarded the same by mail. It is conceded:

"That, under said assignors' firm contract with said insurance companies, said net premiums belonged to the respective companies on whose policies they accrued, and were trust funds in the hands of their said agents, and were to be remitted to said companies monthly. That said firm * * * deposited said moneys * * * under the name of Charles Deal for the sole purpose of remitting said sums by check to said insurance companies, respectively."

At and prior to the making of said assignment Elmer H. Deal was the duly appointed and acting local treasurer of the New York Mutual Savings & Loan Association at Champlain. It was his duty to receive and collect dues, payments, interest, and fines from members of said association, and remit the same, less his commissions, to the head office in New York. It is conceded that said moneys belonged to said association, and that they were held by said treasurer in trust for it. Shortly prior to said assignment said Elmer H. Deal collected from members of said association $143.10, exclusive of his commissions, and deposited the same in said bank in the name of Charles Deal for the sole purpose of remitting the same by check to said association; and forthwith, and on the 25th day of January, 1901, a check was drawn therefor to the order of said association, and duly forwarded by mail. After said checks were so mailed, said assignment was made and delivered. The assignors were and are insolvent. The checks were not presented to the bank for payment until after the delivery of said assignment, and the officers of the bank, having knowledge of the assignment, refused to pay said checks or either of them. The moneys so deposited by said assignors remain on deposit in said bank. The claims of said companies and of said association to said amounts, respectively, have been duly assigned to the plaintiffs, but said bank refuses to pay the amounts to them. The plaintiffs ask that they be adjudged to be the owners of said amounts so held by said bank as aforesaid, and that said bank be directed to pay the same to them. The relation between the insurance companies and the savings and loan association, respectively, and the assignors, was that of principal and agent. The money collected was held as a trust fund, and the relation of debtor and creditor did not arise. It does not appear that any part of the money collected either for the companies or the association was ever mingled in any way with individual or other moneys of the assignors, except that the three trust funds were mingled in so far as they were united in one account in the bank, to be remitted to the owners thereof respectively. The record does not disclose that the assignors ever intended to or did misappropriate any of the moneys so collected. They proceeded in their usual course of business to remit the actual money collected to their principals, but, as the assignment was delivered before the checks were actually presented for payment, the account remained in the bank, the apparent property of Charles Deal. Although the account remained in the name of Charles Deal individually, it was so held for transmission only, and was the property of the corporations in whose favor the checks had been drawn, and for whom it had been collected by the assignors. Property and funds held in trust by an assignor at the time of a general assignment, and capable

of being identified, do not pass to an assignee. The identity and ownership of the money in controversy being conceded, there is but one thing for the court to do in the exercise of its jurisdiction over fiduciary relations, and that is to direct the funds so held by the bank to be paid over to the plaintiffs.

Judgment ordered for the plaintiffs, without costs. All concur.